IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-02118-MSK-MEH

ROY J. MAIN,

        Applicant,

v.

ABBOTT, Warden, and
ATTORNEY GENERAL'S OFFICE,

        Respondents.

---

## RECOMMENDATION ON APPLICATION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241

---

**Entered by Michael E. Hegarty, United States Magistrate Judge.**

Applicant Roy J. Main ("Applicant") has pending before this Court an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Application") [docket #3]. Respondents timely filed their Response [docket #14] together with certain documents appended as exhibits, and Applicant timely filed a Reply [docket #15]. Under the provisions of 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72, this matter has been referred to me for recommendation. Based on the record contained herein, I RECOMMEND that the Application be **denied**, and that this matter be dismissed with prejudice.[1]

---

[1]The parties are advised that they shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72(b). The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or

## BACKGROUND

Applicant is currently incarcerated at the Colorado Territorial Correctional Facility of the Colorado Department of Corrections ("CDOC").  In 1990, Main was sentenced to "one day to life" in prison for a conviction of Sex Assault.  Response, Exh. A, docket #14-2.  Main has two prior felony convictions for Sex Assault, one felony conviction for First Degree Arson, and two misdemeanors for Indecent Exposure and Shoplifting.  *Id.* at ¶ 5.

On July 14, 2008, Main met with Rebecca Oakes, member of the Colorado State Board of Parole ("Parole Board"), for an interview to determine whether Main should be recommended for parole.  *Id.* at ¶ 6.  Oakes testified that she considered Main's prior criminal history, information provided by Main's case manager, Main's CDOC working file, the offense for which Main was sentenced, his time served, and the interview with Main.  *Id.*  After the interview, Oakes decided Main was not a favorable candidate for parole and deferred Main's next parole determination to July 2009.  *Id.* at ¶ 7.  Oakes based her decision on "aggravating factors" listed as "circumstances of offense," inadequate time served, risk to the public due to Main's criminal history, and Main's need to participate in Phase II of the Sex Offender Treatment and Management Program (SOTMP).  *Id.*; *see also* Notice of Colorado Parole Board Action, docket #3 at 24.

## PROCEDURAL HISTORY

Main filed the within Application on October 1, 2008, potentially challenging a number of parole board decisions made in the last several years.  Docket #3.  On November 19, 2008, Judge Weinshienk ordered that any claims challenging parole decisions, other than the decision issued on July 14, 2008, were dismissed as untimely.  Docket #8.

---

adopted by the District Court.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

With this in mind and construing Main's Application liberally, the Court finds that Main alleges Respondents abused their discretion in denying him parole on July 14, 2008, when they failed to consider favorable information, prevented him from completing Phase II treatment which is necessary to be eligible for parole, and failed to provide him an adequate statement of the specific reasons for the denial.  Application, docket #3, at 3-4.  Also, Main alleges that the Parole Board denied him due process by deciding to deny parole "before they even came to see [him]."  *Id.* at 4.  In addition, Main alleges Respondents violated the *ex post facto* clause of the U.S. Constitution when they applied the Colorado Sex Offender Lifetime Supervision Act of 1998 ("Lifetime Supervision Act") to require that he participate in Phase I and Phase II of the SOTMP.  *Id.* at 9.  As relief for these alleged violations, Main requests that the Court grant him a hearing and an "order ... to show cause why this Petitioner should not be writted out by this Court."  *Id.* at 10.

On January 21, 2009, Respondents answered the Application arguing that Main has no federal or state rights to a hearing for the determination of parole and that the interview was conducted in accordance with Colorado law.  Response at 3-6.  Further, Respondents contend that a rational basis exists for the decision to deny parole, considering the reasons listed in the Notice of Colorado Parole Board Action and Oakes' affidavit.  *Id.* at 6-7.  Finally, Respondents claim the *ex post facto* clause has no bearing on the parole board's decision, since the SOTMP does not increase the punishment given to those offenders sentenced prior to the Lifetime Supervision Act. *Id.* at 7-9.

In his reply, Main does not address Respondent's response but, rather, raises new claims that the parole board is biased and prejudiced against him, that it made false representations of material fact, that it treats "drug and alcohol" offense inmates differently and more favorably with regard to release on parole, and that it has inflicted cruel and unusual punishment upon him by subjecting him to the Lifetime Supervision Act.  Reply, docket #15.

## DISCUSSION

### I.    Standard of Review

Because Main is proceeding without counsel, this Court must construe his filings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *see also Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).   However, at the same time, the Court should not act as the *pro se* litigant's advocate.  *Hall*, 935 F.2d at 1110.

### II.    Claims Before the Court

Courts generally do not review issues raised for the first time in a reply brief; however, they may make an exception when the new issues argued in the reply brief are offered in response to arguments advanced in a response brief.  *See Beaudry v. Corr. Corp. of Am.,* 331 F.3d 1164, 1166 n. 3 (10th Cir. 2003); *see also Home Design Servs., Inc., v. B & B Custom Homes,* 509 F. Supp. 2d 968, 971 (D. Colo. 2007) ("'[R]eply briefs reply to arguments made in the response brief - they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration.'" [citation omitted]).  Here, the Court finds that the arguments Main advanced in his reply brief are not responsive to the Respondents' arguments and, therefore, the Court will not review the claims raised in the reply brief.  Thus, the only claims properly before the Court are Main's request for review of the decision to deny parole, the due process claim arising from Main's allegation that the Parole Board predetermined that he would be denied parole, and the *ex post facto* claim arising from Main's allegation that the Parole Board misapplied the Lifetime Supervision Act.

### III.    Analysis of Claims

Here, Main challenges the administration (process) of his parole eligibility determination. Thus, Main's Application is properly analyzed pursuant to 28 U.S.C. § 2241.  "A motion pursuant to § 2241 generally challenges the *execution* of a prisoner's sentence, including such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary

4

actions, prison transfers, type of detention and prison conditions." *Jiminian v. Nash,* 245 F.3d 144, 146 (2d Cir. 2001) (emphasis added); *see also Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996). In his Application, Main asks that the Court review the Parole Board's decision to deny him parole based upon his allegations that the Board failed to consider favorable information in his parole determination, prevented him from completing Phase II treatment which is necessary to be eligible for parole, and failed to provide him an adequate statement of the specific reasons for the denial of parole. Also, Main alleges that he was denied due process when the Parole Board allegedly decided to deny him parole before his parole eligibility interview. In addition, Main contends that the Parole Board violated the *ex post facto* clause by applying the Lifetime Supervision Act of 1998 to require him to participate in the SOTMP, although he was sentenced under an earlier version of the Act that did not require SOTMP participation.

A.    Decision to Deny Parole

Main claims that the Parole Board abused its discretion by its decision to deny him parole in July 2008.

The Colorado Parole Board has unlimited discretion to grant or deny parole to defendants serving sentences for crimes committed on or after July 1, 1985. *Thiret v. Kautzky*, 792 P.2d 801, 805 (Colo. 1990). Consequently, Main has no inherent constitutional right to be conditionally released before the expiration of his sentence. *See Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1, 7 (1979).

Because parole determinations inherently do not lend themselves to concrete and identifiable standards, federal court review of parole denial is limited to determinations of whether the Parole Board's decision was "arbitrary, capricious or an abuse of discretion." *Schuemann v. Colorado State Board of Parole,* 624 F.2d 172, 173-74 (10th Cir. 1980). The parole release decision involves a "discretionary assessment of a multiplicity of imponderables," including but not limited to the nature

of the crime(s) committed, the amount of time served, and the risk to society.  *See Greenholtz*, 442 U.S. at 10.

"The Colorado parole statute does not circumscribe Parole Board discretion, rather it gives broad outlines for the Board to follow." *Schuemann*, 624 F.2d at 173.  The statute does not require the granting of parole upon a showing of any particular facts; rather, the Court's inquiry is only whether there is a rational basis in the record for the Board's conclusions embodied in its statement of reasons.  *See Lewis v. Beeler*, 949 F.2d 325, 331-32 (10th Cir. 1991).  The Board's actions are not an abuse of discretion as long as there was sufficient evidence before the Board to support its decision.  *Wildermuth v. Furlong*, 147 F.3d 1234, 1236-37 (10th Cir. 1998).  Federal courts may not re-weigh evidence, rule on credibility matters, or substitute their judgment for the judgment of the Parole Board.  *Fiumara v. O'Brien,* 889 F.2d 254, 257 (10th Cir. 1989).

Here, Main is serving a "one day to life" sentence for his third felony conviction for sexual assault.  Main asserts that the Parole Board did not consider personal information that favors a grant of parole (*i.e.*, good behavior and educational programs completed).  However, according to the Parole Board member who conducted the interview with Main, Rebecca Oakes, the Board considered not only Main's criminal record and the nature of his offense but also the information provided by Main's case manager and his CDOC Working File.  *See* docket #14-2 at ¶ 6.  Main does not assert that information favorable to him was not provided either by the case manager or through his Working File.  Based upon information provided to it (both favorable and unfavorable), the Parole Board concluded that Main did not serve enough time, that he needed to participate in Phase II of the SOTMP and that there exists a risk to the public based upon the nature of his offense and his criminal record.  Docket #14-2 at ¶ 7.  The Court finds this statement sufficient to inform Main of the Board's reasons for denial.

Main asserts that the Parole Board's denial based upon his failure to complete Phase II of

the SOTMP is improper, since it is a prison policy (over which he has no control) that prevents him from completing the program.  However, the Court finds there was a rational basis in the record for the Board's denial set forth in its statement of reasons.  Specifically, there is sufficient evidence in the record to support the Court's conclusion that the Parole Board exercised its discretion and acted affirmatively in denying Main's parole request, including finding that Main needs to participate in Phase II of the SOTMP to be eligible for parole.  Main does not dispute that he has not participated in Phase II; in fact, in supplemental briefing, both parties acknowledge that Main has participated in Phase II since August 2008 (approximately one month after the challenged parole decision in this matter).  *See* dockets #25 and #26.  While Main contends that he has "finished" Phase II, he admits that he is "now trying to pass Polygraph 2," which he describes as a requirement of the program. Docket #25 at 1.  Nevertheless, the Court finds that Main's claim that he has been prevented from completing Phase II of the SOTMP is unsupported by the record.

Therefore, the Court recommends finding that there was sufficient evidence before the Parole Board to support its decision and, thus, the Board did not abuse its discretion in denying Main parole in July 2008.

B.    Due Process

Main claims that Defendants violated his constitutional right to due process when his parole eligibility was improperly "pre-determined" based upon his criminal record.

The threshold question in any due process analysis in this type of case is whether a liberty interest is implicated.  *Greenholtz,* 442 U.S. at 7; *see also Shirley v. Chestnut,* 603 F.2d 805, 806 (10th Cir. 1979) (applying *Greenholtz*).  Liberty or property interests which merit the protection of the Due Process Clause may arise from two sources: the Due Process Clause itself or state law.  *See Sandin v. Conner*, 515 U.S. 472, 483-84 (1995).  The U.S. Supreme Court has held that "(t)here is no constitutional or inherent right of a convicted person to be conditionally released before the

expiration of a valid sentence." *Greenholtz,* 442 U.S. at 7.  Thus, as a matter of pure constitutional law, the Applicant has no liberty interest in release on parole.  At the same time, a liberty interest in parole may be created if the state employs mandatory language in its statutory scheme. *Greenholtz,* 442 U.S. at 11-12; *Board of Pardons v. Allen,* 482 U.S. 369, 375-78 (1987).  However, Colorado's statutory language does not create such a liberty interest here.

Section 17-2-201 of the Colorado Revised Statutes governs the responsibilities, authority, and discretion of the Colorado Board of Parole. It sets guidelines to be followed when granting, denying, or revoking parole.  This entire section provides a clear and unambiguous description of the duties, responsibilities, and procedures of the Parole Board.  In the same vein, Section 17-2-201(9)(a) specifically sets forth the procedures to be followed when an inmate applies for parole, stating as follows:

> (I) Whenever an inmate initially applies for parole, the board shall conduct an interview with the inmate. At such interview at least one member of the board shall be present. Any final action on an application shall not be required to be made in the presence of the inmate or parolee, and any such action shall require the concurrence of at least two members of the board. When the two members do not concur, a third member shall review the record and, if deemed necessary, interview the applicant and cast the deciding vote. Any subsequent application for parole shall be considered by the board in accordance with the provisions of section 17-2-201(4)(a).

Colo. Rev. Stat. §17-2-201(9)(a)(I).

This section clearly sets forth the procedures to be followed from the initial application for parole to the resolution by the Parole Board.  Main does not argue that the Parole Board failed to follow its procedures (he concedes that the Board *did* conduct an interview with him on July 14, 2008) but, rather, that the Board had determined to deny him parole before the actual interview.  The Court finds no evidence in the record to support Main's claim.

Nevertheless, Main cannot establish that he is entitled to due process protections because he has no liberty interest in the timing of the Parole Board's decision.  There is nothing in the

governing statute as to whether a parole decision must be made at a certain time; thus, the Applicant has no due process claim which would entitle him to relief. *See, e.g., Callis v. Ortiz,* 247 F. App'x 112, 115 (10th Cir. Aug. 30, 2007) (unpublished) (citing *Malek* and concluding that petitioner had no entitlement to a liberty interest because state law provides the Colorado parole board discretion whether to grant or deny parole); *Malek,* 26 F.3d at 1016 (citing *Greenholtz* and affirming the dismissal of a § 1983 complaint because state law created no liberty interest entitling inmate to due process protections); *Mahn v. Gunter,* 978 F.2d 599, 602 (10th Cir. 1992) ("[s]ubjecting [Colorado] petitioner to discretionary parole does not violate his right to due process"); *Shirley,* 603 F.2d at 807 (citing *Greenholtz* and affirming denial of parole release because state law created no liberty interest in parole and thus due process protections were not applicable).

Therefore, this Court recommends that the District Court find that Main has failed to establish a due process violation with respect to the timing of his parole decision in July 2008.

C.    Ex Post Facto

The Applicant claims that the Defendants' imposition upon him of the requirement to participate in the SOTMP under the Lifetime Supervision Act of 1998 before he can be eligible for parole constitutes an *ex post facto* violation, since he was sentenced under the Sex Offender Act of 1968 (which did not impose the same requirement) when he was convicted in 1990.

The Ex Post Facto Clause is found in Article I, Section 10, clause 1 of the United States Constitution: "No State shall . . . pass any . . . ex post facto Law."  This prohibition forbids the Congress and the States to enact any law "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Weaver v. Graham*, 450 U.S. 24, 28 (1981) (quoting *Cummings v. Missouri,* 4 Wall. 277, 325-26 (1867)).  The Clause "is aimed at laws that 'retroactively alter the definition of crimes or increase the punishment for criminal acts.'" *California Dep't of Corrections v. Morales*, 514 U.S. 499, 504

9

(1995) (quoting *Collins v. Youngblood*, 497 U.S. 37, 43 (1990)).  The focus of the *ex post facto* inquiry is not on whether a change in the law produces an ambiguous "disadvantage" nor on whether an amendment affects a prisoner's opportunity to take advantage of early release but, rather, on "whether any such change alters the definition of criminal conduct or increases the penalty by which a crime is punishable." *Id.* at 506 n.3.

The Tenth Circuit in *Gwinn v. Awmiller*, 354 F.3d 1211, 1227 (10th Cir. 2004) addressed essentially the same claim raised by the Applicant in this action - whether the requirement to participate in a treatment program for sexual offenders set forth in a law enacted after the commission of the offense violates the Ex Post Facto Clause.  The Tenth Circuit rejected the claim finding that "because application of the [Sexual Offender Treatment Program] did not affect the legal consequences of [the plaintiff prisoner's] crime or increase his punishment, there is no *ex post facto* violation." *Id.* (citing *Chambers v. Colorado Dep't of Corrections*, 205 F.3d 1237, 1242 (10th Cir. 2000)); *see also Carroll v. Simmons*, 89 F. App'x 658, 663 (10th Cir. Feb. 4, 2004) (unpublished) (retroactive application of a prison rule under which level of privileges was dependent on participation in sex offender treatment program did not violate prohibition against ex post facto laws).

Here, the Applicant's proffered argument does not support his *ex post facto* claim.  The requirement to participate in Phase I and Phase II of the SOTMP has not increased his punishment, nor does the requirement criminalize conduct that was legal before its imposition. *See Chambers*, 205 F.3d at 1242.  More importantly, participation in the SOTMP for prisoners convicted under Colorado's Sex Offenders Act of 1968 is not necessarily required; rather, the Parole Board has the discretion to place inmates convicted under the 1968 Act in a treatment program, and the 1968 statute does not require the Board to consider successful participation in a treatment program. *See Helm v. Colorado*, 244 F. App'x 856, 858 (10th Cir. July 25, 2007) (unpublished).

Thus, because participation in the SOTMP did not affect the legal consequences of Applicant's crime or increase his punishment, there is no violation of the Ex Post Facto Clause. The Court recommends that the District Court deny the Application with respect to the *ex post facto* claim.

D.   Evidentiary Hearing

Main "request[s] that this court grant this Petitioner a hearing." Application at 10. Generally, a petitioner is "entitled to an evidentiary hearing ... if his allegations, if true and not contravened by the record, would entitle him to habeas relief." *Mayes v. Gibson,* 210 F.3d 1284, 1287 (10th Cir. 2000); *see also* 28 U.S.C. § 2254(e)(2) (limiting the circumstances in which a court reviewing a habeas corpus petition can conduct an evidentiary hearing). Main does not explain what evidence or materially disputed factual issues he believes would be illuminated by an evidentiary hearing. Thus, the Court recommends that Main's request for an evidentiary hearing be denied.

## CONCLUSION

Accordingly, and based on the foregoing, it is hereby RECOMMENDED that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [filed October 1, 2008; docket #3] be **denied** and that the case be dismissed with prejudice.

Dated at Denver, Colorado, this 22nd day of January, 2010.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge